UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIM. NO. 15-239 (SRN/JSM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| RODNEY LUTHER WILLIAMS, JR. (1), | |
| Defendant. | |

This matter came before the Court upon defendant Rodney Williams's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 36]. Jeff Paulsen, Assistant United States Attorney, appeared on behalf of the Government. Lee R. Johnson, Esq. appeared on behalf of defendant Rodney Williams, who was personally present. The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.    FACTUAL BACKGROUND

### A.    February 17, 2015 Search Warrant

On February 12, 2015, Officer Scot Kaiser with the Minneapolis Police Department submitted an application with supporting affidavit for a warrant to search the residence at XXXX 3rd Street NE #2 in Minneapolis, Minnesota ("Residence") for evidence of controlled substances including heroin, including all onsite storage facilities. Gov't Ex. I, pp. 1-3.

In support of his application for a search warrant, Officer Kaiser provided the following information bearing on Williams's motion to suppress:

> XXXX 3rd St NE #2 is the home of Rodney Williams Jr, a
> heroin dealer.  A CRI has bought heroin from Williams out of

or near this location dozens of times over the past couple of years, including two controlled buys[1] with the 5th Pct CRT Team and a UC buy from Williams.[2]

Your Affiant observed Williams in his vehicle, a 2000 Lexus RX 300 SUV MN plate XXX-XXX, which also lists to this address, outside of his home inside of this vehicle completing an apparent drug deal.[3]   The CRI has told officers that he knows Williams holds a large amount of narcotics in his home and goes back there between deals to get enough for the next customer.   The ATF has also had CRI's buy from Williams who have knowledge that he deals from his home and goes there to resupply between deals. Williams and his friend LaRoyale Holden have been known to buy and trade firearms for narcotics.   Williams has a history of charges including: 3rd Degree sale and flee police in motor vehicle.

Due to the above information and through training and experience, your Affiant believes there is illegal narcotics dealing/distribution going on at the residence.

Id., p. 2.

On February 17, 2015, the Hennepin County District Court issued an order authorizing a search of the Residence for evidence of controlled subtances, including all onsite storage facilities; all vehicles, including a Lexus RX 300 SUV MN Plate XXX-XXX; and the persons of Rodney Luther Williams, Jr. and LaRoyale Theopulis Holden, for evidence of controlled substances.   Id., p. 4.   The court found probable cause to believe that evidence of controlled substances would be found at the Residence.   Id.

---

[1]     In its pre-hearing memorandum, the Government stated that an informant had made controlled purchases of heroin from Williams on October 23, 2014 and November 25, 2014.  Consolidated Response to Defendants' Pretrial Motions, p. 3 ("Gov't Consol. Resp.") [Docket No. 38].   Officer Kaiser testified that these controlled purchases had been conducted by a different law enforcement agency and were not the same controlled purchases he had referenced in his supporting affidavit.

[2]     Officer Kaiser testified that these controlled purchases had occurred one to two weeks before February 17, 2015.  The two purchases were less than a week apart.

[3]     Officer Kaiser testified that he had made this observation a few days prior to February 17, 2015.

At the hearing, Officer Kaiser testified that after submitting his application for a search warrant, he realized he had omitted the dates from his supporting affidavit. Officer Kaiser testified that this omission was inadvertent and was not intended to be misleading.   Officer Kaiser testified that the reviewing judge never questioned him regarding the timing of the events set forth in the supporting affidavit.

Officer Kaiser executed the search of the Residence on February 18, 2015. Id., pp. 6-7.   During the search, officers seized quantities of suspected narcotics, drug paraphernalia, two handguns, ammunition, and United States currency. Id.

### B.   June 2, 2015 Search Warrant

On June 2, 2015, DEA Task Force Officer Benjamin Henrich applied for another warrant to search the Residence, and any attached garage, for evidence of narcotic drugs and controlled substances including heroin and cocaine.   Gov't Ex. 2, pp. 1-3.   In support of his application, Officer Henrich attested as follows:

> Your Affiant learned from Minneapolis Police 5th Precinct Community Response Team (CRT) that on February 12, 2015 they had executed a search warrant at XXXX 3rd Street NE, #2, Minneapolis, MN and had arrested Rodney Luther Williams, Jr, and Laroyale Theopolus Holden.   The CRT had been conducting controlled purchases of heroin from Williams, Jr and Holden.
>
> During the search officers located 2 handguns in a safe, one which was later found to be stolen, and approximately 28 g of heroin that field tested positive and 50 g of cocaine that field tested positive.
>
> Your Affiant learned that Williams, Jr aka Moochie, and Holden had been the target of [a] heroin sale case by the Cannon River Drug and Violent Offender Task Force.   Your Affiant spoke to ATF Special Agent Steve Foreman and CRDVOTF[4] Agent Cadie Spicer.   Your Affiant learned that through their investigation they learned that both Holden and

---

[4]     CRDVOTF refers to the Cannon River Drug and Violent Offender Task Force.

Williams, Jr. would sell heroin and that they would pass a cell phone between them and buyers did not know who would show up to deliver the heroin.

Your Affiant learned from Confidential Informants (CI's) that after the arrest Williams, Jr, and Holden were being very cautious and being selective on who[m] the[y] dealt to.  No new CI has been developed to purchase heroin from them.  Your Affiant believed that Williams, Jr still lived with his girlfriend at XXXX 3rd Street NE, #2, Minneapolis, MN.

On June 1, 2015 Your Affiant was able to perform a trash pull from the alley behind XXXX 3rd Street NE.  Your Affiant also observed a black male drive up and park in front of the address in MN license plate XXXXXX.  Minneapolis Police data base checks showed that Holden had reported this vehicle stolen in April 19, 2015 and a suspect was arrested in that case and the vehicle had been returned.  The physical [description] of the [sic] Holden matched the driver of the vehicle that got out and walked up to XXXX 3rd Street NE.

Your Affiant removed three bags of trash from the trash can and brought them back to the Minneapolis DEA office and went through them.  Your Affiant located over 36 clear plastic baggies that had been torn up and the corners torn off.  Your Affiant is familiar with this and knows this to show packaging of small quantities of narcotics.  Also located were 6 baggie corners that appeared to contain a light colored residue and two mailings for Abigail Box, XXXX 3rd Street NE, #2, Minneapolis, MN.   Box had been previously identified by CRDVOTF as the girlfriend of Williams.

The items were photographed and an ion scan was completed on the corners that appeared to have residue.  Your Affiant met with MN National Guard 1st Sgt. Derek Bronson.  Sgt. Bronson performed a calibration check and the machine was working properly.   Sgt. Bronson then performed a scan on a sample from a baggie corner.  The ion scan indicated that the baggie had cocaine and heroin residue.  A copy of the results was given to Your Affiant.

Your Affiant believes that Williams, Jr. and Holden continue to sell heroin and other narcotics and use XXXX 3rd Street NE, #2, Minneapolis, MN to package and store the narcotics.

Id., pp. 2-3.

On June 2, 2015, the Hennepin County District Court issued an order authorizing a search of the Residence and any attached garage, having found probable cause that evidence of narcotics would be found inside.  Id., p. 4.   On June 5, 2015, law enforcement officers executed the search of the Residence and seized suspected narcotics, cell phones, and digital scales.  Id., p. 5.

**C.    June 17, 2015 Search Warrant**

On June 17, 2015, Officer Henrich submitted an application and supporting affidavit for a warrant to search a blue LG flip phone, a black Motorola smartphone, and a black ZTE smartphone, and any data contained within the cell phones including call histories, address books, contact lists, SMS and text messages, images, videos, internet history, calendar entries, voice recordings, and filing systems.  Gov't Ex. 3, pp. 1-2.  Officer Henrich's supporting affidavit provided as follows:

> Your Affiant is currently investigating the heroin trafficking of Rodney Luther Williams, Jr aka Moochie and Laroyale Theopolus Holden.  On June 5, 2015 Your Affiant and other law enforcement officers executed a search warrant at XXXX 3rd Street NE, #2, Minneapolis, MN.

> Williams, Jr was found exiting the west bedroom as law enforcement came into the apartment.  Holden was found laying [sic] down in west bedroom.  During a search of the closet of the west bedroom there was a size 9.5 Nike show that contained a baggie of suspected heroin and several Xanax pills.  The suspected heroin field tested positive for heroin.

> Three cell phones were also located and seized; two from the west bedroom and one from the living room.  Your Affiant knows that controlled purchases of heroin were completed with Confidential Informant(s) and/or Undercover Officers and that these purchases were set up using cell phones.

> Your Affiant knows that narcotics dealers commonly use cell phones to conduct narcotics transactions and that evidence of narcotics sales is commonly found in the phones.

> Your Affiant respectfully requests the courts permission to search the contents of the cell phones for further evidence of narcotics sales.

Id., p. 2.

On June 17, 2015, the Hennepin County District Court issued an order authorizing the search requested by Officer Henrich.  Id., p. 3.  The court found that probable cause existed to believe that the cell phones were used as a means of committing a crime.  Id.

Officer Henrich executed the search of the cell phones on June 22, 2015.  Id., p. 4.  The search warrant return indicated that as of June 22, 2015, the data recovered from the cell phones was pending analysis.  Id.

### D.  Motion to Suppress and Government Response

In support of his motion to suppress, Williams argued that the February 17, 2015 search warrant for the Residence was fatally flawed because the supporting affidavit did not cite specific dates or times.  Memorandum of Law in Support of Motion to Suppress Evidence Obtained as a Result of Search and Seizure, pp. 2-4 ("Def.'s Pre-Hearing Mem.") (citing United States v. Button, 653 F.2d 319 (8th Cir. 1981); United States v. Salvucci, 599 F.2d 1094, 1096 (1st Cit. 1979); United States v. Boyd, 422 F.2d 791 (6th Cir. 1970); Rosencranz v. United States, 356 F.2d 310, 315-18 (1st Cir. 1966); Poldo v. United States, 55 F.2d 866, 868 (9th Cir. 1932); Staker v. United States, 5 F.2d 312, 314 (6th Cir. 1925)) [Docket No. 37].  Williams further maintained that the good faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984), did not save the February 17, 2015 search warrant, as no police officer could have reasonably presumed that a search warrant without specific dates or times would pass constitutional muster.  Id., pp. 4-5.

6

In its pre-hearing response to Williams's pretrial motions, the Government conceded that because the supporting affidavit had omitted the dates of the events upon which probable cause was based, the affidavit on its face did not establish probable cause. Gov't Consol. Resp., p. 4. However, the Government maintained that the omission of dates did not require suppression of the evidence because law enforcement officers had relied in good faith on the existence of an otherwise facially valid search warrant. Id. According to the Government, Officer Kaiser actually had probable cause to search the Residence based on the series of controlled purchases from Williams and co-defendant Holden; Officer Kaiser simply failed to articulate probable cause adequately by inadvertently omitting the dates of the transactions. Id. Because suppression of evidence due to poor police draftsmanship would serve no deterrent purpose, the Government contended that Williams's motion to suppress should be denied. Id., pp. 4-5. The Government also asserted that the cases cited by Williams in his pre-hearing memorandum predated Leon, and therefore, they were no longer valid precedent. Id., p. 5. With respect to the June 5, 2015 search warrant for the Residence, and the search warrant for the three cell phones found in the Residence, the Government submitted that Williams had provided only boilerplate allegations in support of his motion and had failed to articulate any specific basis for suppression. Id., p. 6.

In his post-hearing memorandum, Williams argued that the Leon good-faith exception did not apply to the February 17, 2015 search warrant, as the supporting affidavit was so lacking in indicia of probable cause that a belief in its existence was objectively unreasonable. Defendant's Post-Hearing Memorandum in Support of Motion

to Suppress Evidence, pp. 1-2 ("Def.'s Post-Hearing Mem.") [Docket No. 42].   Williams urged that although the good-faith exception is broad, the Government's ability to rehabilitate a deficient affidavit is not without limits.   Id., pp. 2-3.   As for the June 5, 2015 search warrant for the Residence and the search warrant for the cell phones, Williams maintained that any evidence obtained from these searches should be suppressed as fruits of the unlawful search conducted on February 18, 2015.   Id., pp. 4-5.

In response, the Government reiterated its argument that Officer Kaiser's inadvertent omission of the dates from his supporting affidavit did not require suppression.   Post-Hearing Memorandum of the United States in Opposition to Defendants' Motion to Suppress Evidence, p. 3 [Docket No. 44].   According to the Government, Officer Kaiser actually had probable to search the Residence based on the series of controlled drug purchases from Williams; Officer Kaiser simply failed to articulate probable cause adequately by omitting the dates of the transactions.   Id.   The Government contended that suppression due to sloppy draftsmanship would serve no deterrent purpose, as the exclusionary rule was designed to deter illegal police conduct. Id.   Regarding the second search of the Residence and the subsequent search of the three cell phones, the Government argued that because the evidence obtained from the February 17, 2015 search warrant was admissible under the good-faith exception, there was no basis to suppress the fruits of the remaining search warrants.   Id., pp. 4-5.

## II.   DISCUSSION

When a search is executed pursuant to a warrant, a court must determine whether the warrant was supported by probable cause.   United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007) (citing Walden v. Carmack, 156 F.3d 861, 870

(8th Cir. 1998)).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."   United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The task of a court issuing a search warrant is to "'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007) (quoting Gates, 462 U.S. at 238); see also United States v. Hyer, 498 F. App'x 658, 660 (8th Cir. 2013) ("[P]robable cause is a practical, factual, and nontechnical concept, dealing with probabilities. The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit.") (internal quotation marks and citations omitted); United States v. Howe, 591 F.2d 454, 457 (8th Cir. 1979) ("For federal agents to establish probable cause to search it is necessary only to demonstrate with some degree of reasonableness that federal criminal activity is 'probable,' not that it exists beyond a reasonable doubt.") (citations omitted).

When reviewing the decision of the issuing judge, a district court must ensure that the magistrate had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed . . . .") (citation omitted).  In doing so, a reviewing court must give "great deference to the

magistrate's probable cause determination." United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006); LaMorie, 100 F.3d at 552 ("[W]e owe substantial deference to the determination of probable cause by the issuing judge."). Accordingly, "[i]n doubtful or marginal cases, the resolution of the Fourth Amendment question should be determined to a large extent by the preference accorded to searches based upon warrants." United States v. Leichtling, 684 F.2d 553, 555 (8th Cir. 1982) (quoting United States v. Christenson, 549 F.2d 53 (8th Cir. 1977)).

At the same time, the Eighth Circuit has warned that "[c]onclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining that probable cause exists." United States v. Summage, 481 F.3d 1075, 1077-78 (8th Cir. 2007) (quoting Caswell, 436 F.3d at 897-98). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Id. (quoting Gates, 462 U.S. at 239).

"When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. O'Dell, 766 F.3d 870, 874 (8th Cir. 2014) (alteration in original) (quoting United States v. Soloman, 432 F.3d 824, 827 (8th Cir. 2005)).

> Under the [Leon] good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable. The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.

United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (citing Proell, 485 F.3d at 430-31 (alterations in original) (internal quotations omitted).

### A.    February 17, 2015 Search Warrant

The Government has conceded that the February 17, 2015 search warrant for the Residence was not supported by probable cause, as Officer Kaiser had inadvertently omitted the dates of the events upon which probable cause was based. Thus, the Court proceeds to determine whether the evidence obtained as a result of the deficient search warrant is admissible under the Leon good-faith exception.

"Under the [Leon] good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (citing Proell, 485 F.3d at 430-31 (alterations in original) (internal quotations omitted); see also United States v. Long, 797 F.3d 558, 566 (8th Cir. 2015) ("Under the good-faith exception, evidence is not excluded when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, even if the warrant is subsequently invalidated.") (internal quotation marks omitted) (quoting United States v. Cannon, 703 F.3d 407, 412 (8th Cir. 2013)). "The court must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." United States v. Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015) (citation omitted).

In Leon, the Supreme Court explained that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a

magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'"  468 U.S. at 922 (citations omitted).  Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23 (footnote omitted).

> Leon identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

Perry, 531 F.3d at 665 (quoting Proell, 485 F.3d at 431).  With respect to the third exception, the Eighth Circuit has explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in Leon or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." Proell, 485 F.3d at 432 (quoting United States v. Carpenter, 341 F.3d 666, 670 (8th Cir. 2003)).

In the instant case, the Court rejects Williams's argument that the failure to include specific dates or times in the supporting affidavit necessarily renders an officer's reliance on the search warrant unreasonable under Leon.[5]   As the Government

---

[5]   In his pre-hearing memorandum, Williams argued that the fourth limitation to the good-faith exception applied to the instant case.  Def.'s Pre-Hearing Mem., p. 5. However, in his post-hearing memorandum, Williams contended that the issue was whether the third limitation applied.   Def.'s Post-Hearing Mem., p. 2.   Because Williams's position is not entirely clear, the Court will consider both the third and fourth limitations to the Leon good-faith exception.

correctly noted, the cases cited by Williams that invalidated a search warrant issued based on an affidavit lacking dates or times predate <u>Leon</u>, and thus, they are not instructive as to whether the good-faith exception should apply here.  However, in his post-hearing memorandum, Williams identified two cases in which a court considered an affidavit lacking dates or times under the good-faith exception: <u>United States v. Corrigan</u>, 809 F. Supp. 567 (M.D. Tenn. 1992), and <u>United States v. Herron</u>, 215 F.3d 812 (8th Cir. 2000).

In <u>Corrigan</u>, a police officer applied for a warrant to search Corrigan's residence for a pipe bomb.  809 F. Supp. at 568.  In his affidavit in support of the warrant, the officer referenced a conversation he had secretly taped, in which Corrigan admitted to having a pipe bomb in the barn behind his house and offered to pay the officer to assault another man and collect a gambling debt from him.  <u>Id.</u>  After obtaining a warrant, the officer searched Corrigan's residence and found a pipe bomb.  <u>Id.</u>  Corrigan moved to suppress the pipe bomb on the grounds that the officer had failed to include in his affidavit any reference to the date he had received the information forming the basis of his warrant application.  <u>Id.</u>  Corrigan contended that this omission violated his Fourth Amendment right to be free from searches based on stale information.  <u>Id.</u>  The government conceded that the officer's affidavit could not support a finding of probable cause, but it maintained that the good-faith exception applied.  <u>Id.</u>  At the hearing on the motion to suppress, the government established that the officer had given the date of his conversation with Corrigan to a different judge, which suggested that the officer had intended to include the date in his search warrant application.  <u>Id.</u> at 569.  In addition, the officer testified that he knew he was obligated to set forth the date of his

conversation and that he had simply forgotten to include it.  Id.  Based upon these facts, the government contended that the officer had relied in good faith on the issuance of the warrant.  Id.  The court found, however, that under Leon, a police officer's reliance on a search warrant must be objectively reasonable, and any reasonably well-trained officer would have known that an affidavit lacking dates could not support a finding of probable cause.  Id. at 570.  The court explained that while the officer may have subjectively relied in good faith on the issuance of the warrant, the government had failed to demonstrate that the officer's reliance was objectively reasonable.  Id.

Although Corrigan is factually analogous to the instant case, the law of this Circuit dictates a different outcome.  The Eighth Circuit has repeatedly held that "[a]lthough the good-faith standard is an objective one, 'it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed.'"  United States v. Frangenberg, 15 F.3d 100, 103 (8th Cir. 1994) (quoting United States v. Curry, 911 F.2d 72, 78 (8th Cir. 1990)); Jackson, 784 F.3d at 1231 ("In assessing the objective reasonableness of a police officer's execution of a warrant, we must look to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge.") (citation omitted); Proell, 485 F.3d at 431 ("'When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge.'") (alteration in original) (quoting United States v. Marion, 238 F.3d 965, 969 (8th Cir.2001)); United States v. Berry, 113 F.3d 121, 124 (8th Cir. 1997) ("'[I]n assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take

into account the knowledge that an officer in the searching officer's position would have possessed.'") (citation omitted).

Here, Officer Kaiser testified that the two controlled purchases of heroin from Williams had occurred one to two weeks prior to February 17, 2015, the date the search warrant was issued.  As a member of the Fifth Precinct CRT, Officer Kaiser participated in the execution of these controlled purchases.  Thus, even though Officer Kaiser did not include any dates in his supporting affidavit, he was clearly aware of the timing of the controlled purchases and did not intend to mislead the issuing judge by omitting this information.  Accordingly, the Court concludes that Officer Kaiser's failure to include the dates was nothing more than an unintended error.  Further, Officer Kaiser testified that the issuing judge never questioned him regarding the dates of the controlled purchases. Because the issuing judge had final authority to review the search warrant application and affidavit, Officer Kaiser could have reasonably believed that the lack of dates was not fatal to a finding of probable cause.  See Berry, 113 F.3d at 124 ("The municipal judge signed both the affidavit and the warrant and, as the final reviewing authority, he must shoulder the ultimate responsibility for the clerical error in the warrant.  Thus, the purpose of the exclusionary rule is not served by suppression of the evidence seized pursuant to the search at the Berrys' address.") (citations omitted).

In Herron, the Circuit Court of Harrison County, Missouri, issued a search warrant for Herron's residence, which was supported by affidavits from Agent Lenhart of the Missouri Conservation Department and Trooper Tyes of the Missouri Highway Patrol.  215 F.3d at 813.  Agent Lenhart's affidavit stated that during a poaching investigation, he had learned that Herron's neighbor, Tommie Buck, was under

suspicion in Kentucky for marijuana cultivation.  Id.  Agent Lenhart delivered poaching citations to Buck at Herron's farm, and Buck informed Agent Lenhart that he was staying with Herron to harvest corn.  Id.  Later, Agent Lenhart notified Trooper Tyes that Buck might be involved in marijuana cultivation.  Id.  Trooper Tyes's affidavit stated that he and Agent Lenhart had searched an open area of Buck's cornfield and had discovered hundreds of marijuana plants hidden between rows of corn.  Id.  The Kentucky State Police informed Trooper Tyes that Buck was under a 1996 indictment for marijuana cultivation and that Herron, a relative of Buck, had two previous convictions for marijuana cultivation in Kentucky.  Id.

On appeal, the government conceded that the search warrant for Herron's residence was not supported by probable cause, arguing that the good-faith exception applied.  Id. at 814.  Herron contended that objective good faith was not present because the supporting affidavits were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  Id.  The Eighth Circuit agreed with Herron and held as follows:

> The affidavits provide no evidence that there was any illegal activity at the Herron residence and no evidence that Mr. Herron ever participated in the cultivation of the marijuana found at the Buck farm. Mr. Herron was never seen at the location where the marijuana was discovered, and no marijuana had ever been seen at his residence. Mr. Herron made no admission that he had been at the site of the marijuana cultivation, and he was not shown to have been associated with the Bucks in past marijuana dealings. The only evidence in the affidavits concerning Mr. Herron related to his prior marijuana convictions and his familial relation to the Bucks. The only evidence concerning the Herron residence was that one time, four months before the search warrant was sought, Buck, Jr., said he was staying there to help harvest corn. We do not think that a reasonable officer would believe that these facts established probable cause to

16

search the Herron residence for marijuana or the implements of its cultivation.

Moreover, we think that the officers involved should have been fully aware of the deficiencies of their affidavits. The problem is not a technical legal deficiency; the affidavits simply do not say very much about Mr. Herron or his residence. The officers' affidavits were originally prepared to support a search-warrant application for the Buck farm. On this subject, they are focused, complete, and quite probative. By contrast, the affidavits barely touch on the Herron residence or Mr. Herron and then only in a way incidental to the Buck investigation. While the same affidavit can support probable cause at more than one location, here the affidavits were designed to support a search warrant for the Buck farm and applied to the Herron residence as an afterthought. Under these circumstances, we think that the lack of probable cause in the affidavits would have been apparent to reasonable officers. In reaching this conclusion we are mindful that the subject of this search—a person's home— enjoys special protection under the Fourth Amendment.

Given the lack of evidence in the affidavits and the obvious nature of the deficiency, we conclude that the officers did not reasonably rely upon the issuing court's determination of probable cause for a search warrant.

Id. at 814-15 (footnote omitted).

Herron is distinguishable from the instant case.  In Herron, the officers' reliance on the search warrant was unreasonable because "'[t]here is simply no evidence in either affidavit that [marijuana or the implements of marijuana production] would be found at [Mr. Herron's] residence . . . .'"  Id. at 814 (alterations in original).  The court noted that the problem was "not a technical legal deficiency; the affidavits simply do not say very much about Mr. Herron or his residence."  Id. at 814.  By contrast, Officer Kaiser's affidavit set forth facts showing that Williams was trafficking narcotics from the Residence; however, due to a mistake, the affidavit did not include any dates or times, even though Officer Kaiser was fully aware of this information.  In other words, the

17

affidavit suffered from a mere "technical legal deficiency" such that Officer Kaiser's reliance on the otherwise valid search warrant was not entirely unreasonable.

In sum, the Court does not find that Officer Kaiser's affidavit was so lacking in indicia of probable cause, or so facially deficient, that no reasonable police officer could have believed that the search warrant was valid.  Accordingly, the good-faith exception applies, and Williams's motion to suppress the results of the search of the Residence on February 18, 2015 should be denied.

### B.   Remaining Search Warrants

Williams argued that any evidence obtained as a result of the June 2, 2015 search warrant for the Residence and the June 17, 2015 search warrant for the three cell phones should be suppressed as fruits of the unlawful search conducted on February 18, 2015.   Because this Court has concluded that suppression was not warranted under the Leon good-faith exception with respect to the February 17, 2015 search warrant, the Court also finds that any evidence obtained as a result of the June 2, 2015 and June 17, 2015 search warrants should not be suppressed.[6]

### III.   RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that

Defendant Rodney Williams's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 36] be **DENIED**.

---

[6]   The Court notes that the June 2, 2015 and June 17, 2015 search warrants were independently supported by probable cause, without reliance on the February 18, 2015 search and seizure at the Residence.  Thus, even if this Court were incorrect in its conclusion that the good-faith exception applied to the February 17, 2015 search warrant, the Court would have nonetheless recommended that evidence obtained as a result of the June 2, 2015 and June 17, 2015 search warrants should not be suppressed.

Dated:          October 21, 2015

s/ Janie S. Mayeron
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 4, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.