# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 15-CR-239 (SRN/JSM) |
| v. | MEMORANDUM OPINION AND ORDER |
| Rodney Luther Williams, Jr., | |
| Defendant. | |

Jeffrey S. Paulsen, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff

Lee R. Johnson, Johnson & Greenberg PLLP, 600 South Highway 169, Suite 815, St. Louis Park, Minnesota 55426, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Janie S. Mayeron dated October 21, 2015 [Doc. No. 46]. In the R&R, Magistrate Judge Mayeron recommends that this Court deny Defendant's Motion to Suppress Evidence [Doc. No. 36]. Defendant filed objections to the R&R ("Objections" [Doc. No. 47]), to which the Government responded [Doc. No. 49]. The Court has reviewed de novo those portions of the R&R to which any party objects, as required by 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(3). Based on that review, the Court adopts the magistrate judge's R&R and denies the Motion to Suppress.

## I. BACKGROUND

Defendant Rodney Luther Williams, Jr. is charged in a multi-count indictment with the following drug-related offenses: (1) one count of conspiracy to distribute heroin; (2) three counts of distribution of heroin; (3) one count of possession with intent to distribute heroin; (3) one count of possession with intent to distribute cocaine; and (4) one count of possession of a firearm in furtherance of a drug trafficking crime. (Indictment, Counts 1-7 [Doc. No. 1].)

### A. February 17, 2015 Search Warrant

After receiving a tip from a confidential reliable informant ("CRI"), on February 17, 2015, Minneapolis Police Officer Scot Kaiser applied for a warrant to search the following for evidence of narcotic drugs and controlled substances: a residence in Minneapolis, Minnesota, including any on-site storage facility for the residence, any on-site vehicles, including a Lexus SUV registered to Williams, and the persons of Williams and co-Defendant LaRoyale Holden. (2/17/15 Search Warrant App., Gov't Ex. 1 at 1-3.) In his affidavit and application for the warrant, Officer Kaiser provided the following information:

> XXXX 3rd St. NE #2 is the home of Rodney Williams Jr., a heroin dealer. A CRI bought heroin from Williams out of or near this location dozens of times over the past couple of years, including two controlled buys with the 5th Pct CRT Team and a UC buy from Williams.
>
> Your Affiant observed Williams in his vehicle, a 2000 Lexus RX 300 SUV MN plate XXX-XXX, which also lists to this address, outside of his home inside of this vehicle completing an apparent drug deal. The CRI has told officers that he knows Williams holds a large amount of narcotics in his

> home and goes back there between deals to get enough for the next customer. The ATF has also had CRI's buy from Williams who have knowledge that he deals from his home and goes there to resupply between deals. Williams and his friend LaRoyale Holden have been known to buy and trade firearms for narcotics. Williams has a history of charges including: 3rd Degree sale and flee [sic] police in motor vehicle.
>
> Due to the above information and through training and experience, your Affiant believes there is illegal narcotics dealing/distribution going on at the residence.

(Id. at 2.)

At Defendant's suppression hearing, Officer Kaiser testified that after he submitted his application for the search warrant, he realized that he had omitted dates from his supporting affidavit. (R&R at 3 [Doc. No.46].) He testified that this was an inadvertent omission and was not intended to be misleading. (Id.) He further stated that the two controlled buys referenced in the first paragraph quoted above occurred one to two weeks prior to February 17, 2015 and occurred less than one week apart. (Id. at 2, n.2.) Officer Kaiser testified that his observation of Williams in his vehicle outside the residence, apparently completing a drug deal, occurred a few days prior to February 17, 2015. (Id. at 2, n.3.)

On February 17, 2015, Hennepin County District Court Judge Luis Bartolomei reviewed the search warrant application and affidavit and found probable cause to issue the search warrant. (2/17/15 Search Warrant, Govt. Ex. 1 at 4.) The judge did not question Officer Kaiser regarding the timing of events set forth in the affidavit. Officer Kaiser executed the warrant on February 18, 2015, seizing quantities of suspected

3

narcotics, drug paraphernalia, two handguns, ammunition, and United States currency. (2/17/15 Search Warrant Return, Gov't Ex. 1 at 6-7.)

   **B.  June 2, 2015 and June 17, 2015 Search Warrant**s

In June 2015, DEA Task Force Agent Benjamin Henrich applied for two subsequent search warrants – a June 2, 2015 application to search Williams' residence and any attached garage and a June 17, 2015 application to search the data contained in three cell phones seized during the execution of the June 2 search warrant. (6/2/15 Search Warrant App., Gov't. Ex. 2 at 1-2; 6/17/15 Search Warrant App., Gov't Ex. 3 at 1-3.) The R&R quotes Agent Henrich's affidavits in full, which are incorporated herein by reference. (R&R at 3-5 [Doc. No. 46].)

   **1.  June 2, 2015 Search Warrant**

Agent Henrich's June 2, 2015 affidavit referenced the February 2015 search and also indicated that Agent Henrich had learned that Williams had been the target of a heroin sale investigation by the Cannon River Drug and Violent Offender Task Force and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (6/2/15 Search Warrant App., Gov't Ex. 2 at 2.) From conversations with Cannon River and ATF agents, Agent Henrich further learned that during the alleged heroin selling operations, Williams and Holden apparently passed a cell phone between them, preventing buyers from knowing which person would deliver the heroin. (Id.)

The affidavit noted that Agent Henrich had learned from Confidential Informants ("CIs") that after Williams and Holden were arrested following the February search, they

were more cautious and selective in their dealings.  (Id.)  Agent Henrich also understood that Williams still lived at the 3rd Street NE address.  (Id.)

On June 1, 2015, Agent Henrich performed a "trash pull" from the alley behind the 3rd Street NE residence.  (Id.)  He also observed a black male parked in front of the address fitting the description of Holden.  (Id.)  A license plate check on the vehicle connected it to Holden.  (Id.)

Agent Henrich removed three bags of trash from a trash can and examined the contents at the Minneapolis DEA office.  (Id.)  He located 36 clear plastic baggies that had been torn up and from which the corners were removed.  (Id.)  In Agent Henrich's experience, this is consistent with the packaging of small quantities of narcotics.  (Id.)  Agent Henrich also examined six baggie corners that appeared to contain a light residue; he also found two mailings listing a woman's name at the XXXX 3rd Street NE, #2 address.  (Id. at 2-3.)  The Cannon River law enforcement officer had previously indicated that this woman was Williams' girlfriend.  (Id. at 3.)  A subsequent ion scan of a residue sample from the baggies indicated heroin and cocaine.  (Id.)

Hennepin County District Court Judge Jeannice Reding reviewed the June 2, 2015 warrant application and affidavit and authorized the search.  (Id.; 6/2/15 Search Warrant, Gov't Ex. 2 at 4.)  On June 5, 2015, Agent Henrich participated in the execution of the search warrant, which resulted in the seizure of three cell phones, a quantity of suspected narcotics, and drug paraphernalia. (6/5/15 Search Warrant Return, Gov't Ex. 2 at 5.)

## 2. June 17, 2015 Search Warrant

In his June 17, 2015 search warrant application and affidavit, Agent Henrich referenced the June 5, 2015 search at XXXX 3rd Street NE, #2. (6/17/15 Search Warrant App., Gov't Ex. 3 at 2.) He indicated that suspicious substances seized during the June 5 search had tested positive for heroin. (Id.) Noting that agents seized three cell phones during the execution of the June 5 search warrant, Agent Henrich observed that controlled purchases of heroin were completed with CIs or Undercover Officers and that cell phones facilitated these arrangements. (Id.) In addition, Agent Henrich attested to his knowledge that narcotics dealers typically use cell phones to conduct narcotics transactions and that the evidence of narcotics sales is commonly found in the phones. (Id.) Agent Henrich therefore sought a search warrant to search the seized phones for further evidence of drug sales. (Id.)

Hennepin County District Court Judge John McShane approved the search warrant permitting the search of the cell phones. (Id.; 6/17/15 Search Warrant, Gov't Ex. 3 at 3.) The Search Warrant Return, dated June 22, 2015, indicated that the phones were pending analysis. (6/22/15 Search Warrant Return, Gov't Ex. 3 at 4.)

### C. Defendant's Motion to Suppress

Williams moves to suppress all three searches and seizures. (Def.'s Mot. to Suppress at 1 [Doc. No. 36].) He argues that the February 2015 search should be suppressed because the search warrant was issued without a sufficient showing of probable cause in the supporting affidavit due to the lack of temporal information from

Officer Kaiser.  (Id. at 1-2.)   Defendant contends that the good faith exception to the Fourth Amendment exclusionary rule is inapplicable, as no police officer would have believed the affidavit was sufficient to establish probable cause, as it lacked any reference to dates or times.  (Def.'s Mem. Supp. Mot. to Suppress at 4-5 [Doc. No. 37].)  As to the seizure of evidence from the two June 2015 search warrants, Williams argues that this evidence should be suppressed as fruit of the poisonous tree.  (Def.'s Post-Hearing Mem. at 4-5 [Doc. No. 42].)

The Government concedes that the February 17, 2015 supporting affidavit does not establish probable cause on its face, due to the omission of the dates of events on which probable cause was based.  (Gov't's Opp'n Mem. at 4 [Doc. No. 38].)  However, the Government contends that the good-faith exception in United States v. Leon, 468 U.S. 897, 919 (1984), applies because Officer Kaiser's belief in the validity of the warrant was objectively reasonable.  (Id.)   The Government argues that

> [t]he exclusionary rule was designed to deter illegal police conduct, not sloppy draftsmanship.  Suppressing evidence due to poor draftsmanship would serve no deterrent purpose, especially where probable cause actually existed for the search and where the issuing judge evidently appreciated the existence of probable cause despite the poor draftsmanship.

(Id. at 4-5.)

The magistrate judge rejected Defendant's argument that the good faith exception was inapplicable, distinguishing the legal authority on which Williams relies.  (R&R at 12 [Doc. No. 46].)  Magistrate Judge Mayeron determined that Officer Kaiser's affidavit was not so lacking in indicia of probable cause, or so facially deficient, that no reasonable

police officer could have believed that the February 17, 2015 search warrant was valid. (Id. at 17-18.) Accordingly, the magistrate judge recommended the denial of Williams' motion to suppress the results of the February search. (Id. at 18.) Because the magistrate judge found that suppression of the February search and seizure was unwarranted, she also recommended that any evidence obtained as a result of the two June search warrants need not be suppressed. (Id.) Moreover, even if the good faith exception did not apply to the February 17 search warrant, the magistrate judge would have still recommended that evidence obtained as a result of the June search warrants not be suppressed because they were independently supported by probable cause. (Id. at 18, n.6.)

## II.     DISCUSSION

As noted, in Leon, the Supreme Court addressed the Fourth Amendment exclusionary rule. Leon, 468 U.S. at 922-26. The Court held that courts should not suppress evidence seized under the authority of a subsequently invalidated warrant unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23; see also United States v. O'Dell, 766 F.3d 870, 874 (8th Cir. 2014) (citation omitted). However, the Court explained that this "good faith exception" to the exclusionary rule does not apply, and the evidence must be excluded, when the officer has no reasonable grounds for believing that the warrant was properly issued. Leon, 468 U.S. at 923. The Court identified the following four circumstances in which an officer's reliance on a warrant would be unreasonable: (1) the issuing magistrate or judge "was misled by information in an affidavit that the affiant

8

knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate or judge "wholly abandoned his detached and neutral judicial role"; (3) "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) a warrant is so facially deficient, "i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." Id. (internal quotation marks omitted).

While Williams does not raise new issues or arguments in his Objections, he clarifies that he relies on the third exception in Leon, noted above, in support of his argument that the good faith exception is inapplicable. (Def.'s Objs. at 2 [Doc. No. 47].) He asserts that "[g]iven the importance of time, the complete absence of any time or dates is such a glaring omission that no reasonably trained officer would believe the affidavit sufficient to establish probable cause . . . ." (Id. at 4) (citing United States v. George, 975 F.2d 72, 77-78 (2d Cir. 1991)).

As noted in the R&R, many cases cited by Williams in his initial memorandum predate Leon; therefore, they are not instructive regarding whether the good faith exception applies here. As to the cases identified in Defendant's post-hearing memorandum, United States v. Corrigan, 809 F. Supp. 567 (M.D. Tenn. 1992), and United States v. Herron, 215 F.3d 812 (8th Cir. 2000), the Court agrees with Magistrate Judge Mayeron's analysis of this authority. The magistrate judge correctly observed that Corrigan, while factually similar, is not the law of this Circuit. (R&R at 14 [Doc. No.

9

46].)

Rather, as the magistrate judge noted, while the good faith standard is an objective one, "'it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed.'" (Id.) (quoting United States v. Frangenberg, 15 F.3d 100, 103 (8th Cir. 1994) (internal citations omitted); United States v. Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015) ("In assessing the objective reasonableness of a police officer's execution of a warrant, we must look to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge.") (citation omitted); United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007) (same); United States v. Berry, 113 F.3d 121, 124 (8th Cir. 1997) (same).

The magistrate judge further observed that Officer Kaiser testified that the two controlled purchases from Williams had occurred one to two weeks prior to the date on which the February 17, 2015 search warrant was issued. (R&R at 15 [Doc. No. 46].) In addition, Officer Kaiser had participated in the execution of these controlled purchases. (Id.) Accordingly, while Officer Kaiser omitted these temporal references in his supporting affidavit, he was "clearly aware of the timing of the controlled purchases and did not intend to mislead the issuing judge by omitting this information," as the magistrate judge properly found. (Id.)

Officer Kaiser's affidavit indicated that a CRI had bought heroin out of Williams' residence on two controlled buys, that the ATF informed Officer Kaiser that its CRIs had also bought narcotics from Williams, and that these CRIs knew that Williams sold drugs

from his home. (2/17/15 Search Warrant App. at 2, Gov't Ex. 1.)  Moreover, Officer Kaiser personally observed Williams outside of his residence, apparently completing a drug deal.  (Id.)  The Court finds these facts distinguishable from United States v. Haney, No. 07-cr-20313-MI, 2009 U.S. Dist. LEXIS 4076 at *3-4 (W.D. Tenn. 2009), a case on which Defendant relies in his Objections.  In Haney, which is not controlling authority in this Circuit in any event, the court found the good faith exception inapplicable where events described in the search warrant affidavit were undated and nothing in the affidavit indicated that the defendant engaged in the alleged criminal activity on more than one occasion or that the defendant's home was the base for an ongoing criminal enterprise.  In contrast, the affidavit here indicated that Williams was engaged in alleged criminal activity on more than one occasion and that his house was a base for ongoing drug deals.  Kaiser's omission of dates was an unintended error.  (R&R at 15 [Doc. No. 46].)

Furthermore, Officer Kaiser testified that the issuing judge did not question him about the dates of the controlled purchases.  (Id.)  Because the issuing judge was authorized to review the search warrant application and affidavit for probable cause, Magistrate Judge Mayeron properly found that "Officer Kaiser could have reasonably believed that the lack of dates was not fatal to a finding of probable cause."  (Id.) (citing Berry, 113 F.3d at 124) ("The municipal judge signed both the affidavit and the warrant and, as the final reviewing authority, he must shoulder the ultimate responsibility for the clerical error in the warrant. Thus, the purpose of the exclusionary rule is not served by suppression of the evidence seized pursuant to the search at the Berrys' address.")

(citation omitted).

The Eighth Circuit's decision in <u>Herron</u>, 215 F.3d at 814, on which Defendant also relies, does not dictate a different result. The affidavit at issue in <u>Herron</u> was infirm not due to temporal insufficiencies but because it exclusively described illegal activity concerning a separate suspect who was the actual primary suspect of the investigation. <u>Id.</u> at 814. The connections between Herron and the primary suspect were, in fact, innocent associations – namely, that Herron was related to the primary suspect, and, four months prior to the issuance of the search warrant, the primary suspect stayed on Herron's farm to help harvest corn. <u>Id.</u> The affidavit noted that while Herron had prior convictions for cultivating marijuana, it contained no information showing that Herron had "ever been seen at the site of the marijuana cultivation, and he was not shown to have been associated with the [primary suspect] in past marijuana dealings." <u>Id.</u> The Eighth Circuit found this was "not a technical legal deficiency; the affidavits simply do not say very much about Mr. Herron or his residence." <u>Id.</u>

The Court fully agrees with Magistrate Judge Mayeron's analysis in the R&R, distinguishing the facts of this case from <u>Herron</u>:

> By contrast, Officer Kaiser's affidavit set forth facts showing that Williams was trafficking narcotics from the Residence; however, due to a mistake, the affidavit did not include any dates or times, even though Officer Kaiser was fully aware of this information. In other words, the affidavit suffered from a mere "technical legal deficiency" such that Officer Kaiser's reliance on the otherwise valid search warrant was not entirely unreasonable.

(R&R at 17-18 [Doc. No. 46].)

The Supreme Court stated in <u>Leon</u> that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." <u>Leon</u>, 468 U.S. at 916.  Based on all of the facts before this Court, the February 17, 2015 affidavit was not so deficient that no reasonable police officer could have believed in the existence of probable cause.  Accordingly, the good faith exception to the exclusionary rule applies and Defendant's motion to suppress the evidence seized during the execution of the February search warrant is denied.

Because Defendant's motion to suppress the evidence seized during the execution of the June search warrants was premised on the exclusion of the February search warrant, his motion is likewise denied as to the June searches and seizures.  The Court further agrees with the magistrate judge that even absent the application of the good faith exception to the February 17, 2015 search warrant, the June search warrants were independently supported by probable cause.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Suppress Evidence [Doc. No. 36] is **DENIED**;

2. Defendant's Objections to the R&R [Doc. No. 47] are **OVERRULED**; and

3. The Court **ADOPTS** the Report & Recommendation [Doc. No. 46].


Dated:   November 16, 2015

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge